Good morning, your honors. Brian Williams on behalf of the Appellate of the County of Orange, S.C. Very well. Mr. Hawkins. Thank you. Appreciate it. Fire away. Thank you. I'm tuning in to do that and I wanted to just, I didn't want to just start rambling off of words. So let me get right to what I feel is the most important point as to why we filed the brief. Thank you. Judge, in this case, the trial court asked me, Mr. Lowe, the majority of these defendants have all settled out. Why are you still here? I'm telling you this is why I brought this action and why I spent the time and why it's so important. And it's the same reason I gave him at that time. I said, Judge, if five people are accused of beating somebody up just because four of them pled out and took a deal, that doesn't mean that the fifth person is supposed to be able to walk away for nothing. And I say that to you and I tell you why this is relevant because I noticed in the brief several times the defendant took, I'm sorry, the appellee took great pleasure, in my opinion, in noticing exactly how much we'd settled this case for with those defendants. In my opinion, that was inappropriate and wasn't supposed to be in there. And I think it's designed to try and remove us from what is supposed to be the point here, and that is what was done wrong in this case. Now, you've got two defendants left? Sir, we have two police officer defendants in the county. Yeah, Massey and Richards? Yes, sir. We had three different police agencies that were involved in this illegal arrest. So what'd they do? Let's just say the defendants were left Massey and Richards. Yes, sir. Thank you. They received custody of my client, who was innocent at the time and remained later innocent when they dismissed the charges against him. And to simply put, the police agencies arrested my client because, honestly, he had a lot of documented evidence against the police chief. We didn't want him to have it. They docked up a way to get into his house and seize all that evidence they did, and they transferred it, and they lost it. It was never found again. We sued them for that, and they settled up. They gave my client, after they used excessive force at his house, ultimately to the Orange County Sheriff's Department. And in Orange County, the Sheriff's Department receives, at that time, all inmates after various police city agencies arrest them. And this is going to be important. So Costa Mesa, Newport Beach, it doesn't matter. They will seize people, and then they take them to Orange County. And that's what they did in this case. And they said some things to the deputies about my client, which were not true, to allow them to, if you will, view him far worse than he needed to in any regard. And as a result... But their position, as I understand it, or your position, is that they have a policy in general, regardless of who your client was, of not allowing telephone calls at the hospital. Yes, ma'am. That's what I was told. As to whether they actually enact that policy for every single person, I couldn't answer that. Is there anything in writing that evidences this policy? Never saw it. Interesting question. If there's a policy, I can't find it, haven't seen it. I don't know whether there is or not. I've read that statement in the brief, but it's not cited to anything. So whether they have it or not, I don't know. But at least in this case, they certainly said they had a policy that says that they won't allow anyone who goes to the medical center because of the excessive force used against them to make any phone calls. Is the county of Orange still on the case? Yes, ma'am. So that would depend on there being a policy. I'm sorry? For the county of Orange to be liable, there would have to be a policy. That's my understanding. Unless they are ratifying the conduct of the individual officers so they may have an unwritten or unspoken policy, which, if you will, could be just a creative defense in this case. However, again, the reason why I thought this was so important is because one of the defenses that they're currently using is saying, well, since we did not actually arrest the person, therefore, under the statute, as you well know, we cannot be held liable for violating it, which I think absolutely violates the spirit of that entire statute. That's a silly argument. Sorry, sir? It's a silly argument. I'll move on. Thank you. I'd like to move off that argument then. And the second argument is, well, under the point of the statute, it says if it's not practicable, which means it's not easy or it doesn't warrant it, we shouldn't have to follow it. And what I think what was interesting about that is that that really puts the analysis in the hands of the person who the statute was designed to enforce against. In other words, they should not be allowed to determine for themselves whether they have to follow it or not. No criminal should be allowed to interpret their own statute. And this is a criminal statute. What am I saying? They're saying, well, because we may have been afraid or because he may have been dangerous or because he may call people and come down and get them out, we don't have to follow the statute. What's interesting about that is that, first of all, Mr. Manning is a foreign police officer. Second of all, he is no danger whatsoever physically. He didn't threaten anybody. He wasn't arrested for any type of violence whatsoever. But most importantly, you could make that accusation against anybody arrested who comes in your care and say that we'll never allow them to have a phone call. And isn't that the one time when you're gone to the hospital as a result of being beaten up that you should have the access to the phone the most for the following reason? If there has to be a decision by your family as to whether or not you should receive certain medical care, aren't they the ones, the family, who are most entitled to know where you're at so that the government just can't come and snatch you up out of your home and take you to some place like no one knows where you're at and you can't receive any type of medical care or you can't let your loved ones know what's going on? They shouldn't be allowed to create that. What's the persuasive argument? What's your next one? My next one, sir, is that if we're going to say that there are limitations on the rule, which I think is fair, I think that those limitations should have some type of scrutiny that is fair, equitable, and is based on facts as opposed to accusation. And in this case, you don't have any of that. It's just a simple blanket, well, we were afraid. But in any event, they could have listened to the phone call, they could have monitored it, they could have taken steps to deal with their fears. Yes, ma'am. And even more importantly, if those fears of destroying evidence, which is one, or getting broken out is another one, an escape, or hurting witnesses that they can't testify, if those are true, why even have a phone in the jail at all? I mean, they could be instantly transferred to the jail so they don't go to Western Med, and they can get on the phone, and again, they can call and try and arrange for a prison break. Let me ask a factual question. Yes, ma'am. He was in the hospital. What time period are we talking about with regard to the telephone? He was in the hospital, and after that, he was taken back to jail? Yes, close. First, Fountain Valley arrested him at his house. Then they take him right to the hospital, not much time at all. Then from that hospital, they take him to Western Medical Facility, another type hospital facility. And that's where he was transferred to the sheriff's office? Yes, ma'am. And then what? And then from there, he was taken to jail, Orange County still. And then when did he get telephone calls? Well, from the facts of the case, if you ask Mr. Maley, it wasn't until two or three days later. And after he got to the jail, what I'm trying to find out was, aside from the period in the hospital, was there also a period in the jail when he didn't get telephone calls? Yes, ma'am, there was. Did the records show whether he asked for the telephone calls when he got to the jail? When he actually physically got to the jail, there aren't any records to describe whether he asked for the phone call and not only what his recollection was. But what's his recollection? His recollection is he started asking for phone calls from the minute he was arrested all the way through the first hospital, the second hospital, Western Med, and the jail, and was denied access. So part of the period we're talking about was not in the hospital, was in an actual jail? That's my recollection, yes, ma'am. You want to save some time for your brother? Yes, sir, thank you. I appreciate it. Just briefly, on that last point, is that right? Your Honor, I would have a different take on that again. The record is entirely unclear whether or not he requested telephone calls once he was ultimately transferred to the Orange County Jail. What is clear from the findings of fact is that when he did get to Orange County Jail, he requested that he be placed in protective custody because of his status as a former police officer. Once you're in protective custody, you don't get phone calls. That was an issue that wasn't fully developed in the trial court because the concern was more what happened at the hospital. And why wouldn't he get phone calls in protective custody? Again, this was not completely developed in the record, but the point being that you're in protective custody for a reason, because you don't want people to know that you were in that jail, so therefore you're essentially... Well, come on. I mean, he wants his family to know where he is, doesn't he? Your Honor, that was also addressed in the trial court, and the testimony at trial was that his wife was informed where he was at, and his wife was allowed to send somebody to pick up their children the night of his arrest. He didn't arrive in Orange County Jail until a couple of days later. The time period is really, I think, the issue in this case. The findings of fact clearly state that he was arrested. Is it the county's position that at no time did he ask to make a phone call? No, Your Honor. The county's position is that what has been developed in the record is that while he was at Western Medical Center, he did ask for phone calls. Let me ask you this. I'm not quite focused on this. Is Orange County still a defendant and an appellee? Yes, they are. They were under Monell theory. I don't see in your brief much argument as to why you should prevail as to the county. Your Honor, I think that... Did you make any argument in your brief to that effect? I believe so. I think the entire tenor of our argument is that... Where did you make that argument in your brief? It's really the plain language argument. Because there is a policy in place. Where in your brief did you argue that the county should be off the hook? I think it's addressed as a single argument based on all of the appellees because we're not... The reason I'm asking this is you make an argument on behalf of the individual appellees that they're following the policy of their employer, which is to say the county. If that's true and if they were required by law to allow the phone calls, you just hung your client at the county. Well, I think that's the point, Your Honor, is that we're saying... Well, that's my point. I'm not sure it should be yours. We're saying that the county is not required, at least in this case, to allow the appellees to phone. I think what Judge Flanagan is saying is that if we disagree with you on the constitutional issue, the county is liable because it did have a policy of doing this. What it did, denying him the phone calls sort of per se in the hospital was the policy. There is a policy based on the findings of fact that if you're at Western Medical Center, because it is an unsecured facility, because this isn't a prison, it's a hospital that's open to the public, that you don't get phone calls. But what difference does that make? I don't understand that either. I mean, in terms of making the telephone calls. If there's a danger about the telephone calls, there's a danger about the telephone calls. Why is it any different if you're in an unsecured facility? Because, Your Honor, there isn't... The general public's there. You have to protect the nurses. You have to protect the doctors. From what? From a phone call? Yeah, and I think this has been recognized in case law, and it's in our brief, that if you allow an arrestee to ask for a phone call, he can phone for an accomplice to help him escape. He can destroy evidence. He could phone for anyone. I think that all you need to do is monitor the phone call. I think that's the difference between being at a public hospital with the ability to easily monitor phone calls as opposed to being at a jail facility where you... So is that your principal argument? That isn't what the district court held. The district court held essentially that the statute doesn't apply to other than the arresting officers. Correct. And that would be... Are you defending that position? Absolutely, Your Honor. I think if you look at the statute... And where do you get that from the statute? If you look at the plain language of the statute, it says that the duty arises in two instances. It says immediately upon being booked and not later than three hours after being arrested. The County of Orange did not arrest Mr. Mailey and did not book Mr. Mailey. He was arrested nine and a half hours before the County of Orange... But the language you just quoted, which is the language of the statute, doesn't say anything about the obligation running only to the arresting officers. But it also doesn't say that the time period or the duty provided by that statute starts over simply because you're transferred into another police agency. Well, it didn't need to start over. You're within the period. Well, actually, Your Honor, the statute says within three hours of arrest. The County of Orange got him nine and a half hours later. So the rights had already been violated. And the part about the settlement... And so therefore it's okay to continue to violate them? Well, I think the point is, and Mr. Below tries to, you know, imply that we're being, you know, unethical by bringing up the settlement issue. That's in the court's findings of fact. The court says that if his rights under the statute were violated, they were violated by the Fountain Valley Police Department, and the Fountain Valley Police Department settled and have a full release for this. The statute says that any police officer or employee willfully deprives an arrested person of any rights. So your position is not, as I understand it, that this... So your position can't be that this second entity can't be officers and that entity can't be liable because they are certainly any public officer or employee. So you need to be saying that he had no right at that. Once the three hours were up, he had no right anymore? And that would be the impossibility argument. If you look at the statute, one of the express exceptions in Subjection A is except where physically impossible. Compliance with this statute was physically impossible by the County of Orange because when they received custody of him, the rights provided by that statute had already been violated. Again, by the Fountain Valley Police Department, who was a priority to this case. I don't understand a physically impossible argument. Your Honor, the point being that the statute has a time period inserted within its plan language that says within three hours of an arrest. The County of Orange took custody of Mr. Maley nine and a half hours after his arrest. That's why it's physically impossible? Well, I think as the district court states, the right had already been, the right provided by Section 851.5 had already been violated before the County of Orange ever even became involved. Now, I think the other thing that has to be pointed out is that even if this Court was to find that there could have been a constitutional violation, the qualified immunity would apply because the statute does not say. Not to the County because the County has a policy. The County has a policy. It's in the Court's findings of fact. The County presumably has a policy whether it's three hours or six hours or nine hours. If he had been taken there immediately, it still had a policy. Well, I think the policy really is more the County of Orange often arrests its own suspects and takes them themselves to... And still has a policy. So the three hours and everything else didn't make any difference. They have a policy. To the policy, no, but I think the distinction here is who arrested him and how the County of Orange became involved. Well, the point is it didn't make any difference because if the County had arrested him or if they had transferred custody within three hours, they still wouldn't have allowed him to make a phone call. Right, but if the County had arrested him, then it would have been their obligation to provide those phone calls and in a given circumstance you'd like to hope that they would have. The point is the Fountain Valley police officers told the County of Orange officer that received him into custody nine and a half hour later that he had been given the phone calls. There's a form. It's signed. There's testimony to this effect. So again... I'm sorry. They told him that he'd been given the phone call? Yes. In the trial court, again this is in the transcript, there's a form that the Fountain Valley police officer that arrested him filled out and it says he actually only completed one. There's a lot of testimony about this. It's ambiguous whether it's zero or one, but it's certainly not three. It's certainly not three, but the statute says up to three, so presumably if Mr. Maley only wanted to make one, it says at least three. I guess it doesn't say you have to have three. It says at least three. If he wants to make three, he gets to make three. Correct, but there's no... He made maybe one and he made maybe zero. Correct, if he doesn't want to make a phone call. But again, so the county, again, receives this arrestee from Fountain Valley. What you just said now is just wrong. They did not have any record that he was given his rights. That's not true, Your Honor. If you read... It said that he was given either zero or one phone call, not three, and he continued to ask for phone calls. The testimony from Officer Richards, I believe it's Officer Harris, and I apologize, from the Fountain Valley Police Department, was that he thought he had complied with 851.5 prior to transferring Mr. Maley into custody. He might have thought it, but he was wrong. But again, so that was... He didn't have any record of that. You said there was a record of it. There wasn't a record of it. There is a form that was completed by the Fountain Valley Police Department that states how much time he had. I'm sorry. There was a form, as I understand it, that said that he was given either zero or one phone call.  There's no form that says that he had three phone calls. But that would assume that the County of Orange knew that he wanted three phone calls. If he only wanted one, the Fountain Valley Police Department wouldn't have given him that. And so he kept asking to make a phone call, apparently, when he was there. Once he's there, then the County's policy regarding no phone calls once you're in this hospital... Oh, I understand. So it's all irrelevant. This whole discussion is irrelevant, because they had a policy, and no matter how many... And in fact, he didn't make three phone calls, and the reason he didn't let him make three phone calls was because they had a policy against making phone calls. They did have a policy against making phone calls. All right. It is, Your Honor. It's in the findings of fact. It actually cited to a specific... I just want to clarify that the whole discussion we just had is totally irrelevant, because they had no reason to think he'd be allowed three phone calls, and he wasn't allowed three phone calls, and he wouldn't have been allowed three phone calls. So what's the point? Why did you bring it up at all? Because they don't think that compliance with this statute was required. If you can't prove a due process violation against Mr. Maley... That's a different issue. That's a different issue. But you began to suggest that, in fact, they had reason to think that there was compliance. That they did not. I disagree. If Officer Harrison from the Fountain Valley Police Department tells them that his rights under 851.5 had been complied with... So you think there was an oral communication saying that? There is testimony, again, from Officer Harrison in the trial court that he believed that he had complied with it and presumably told the... Presumably, but there's no evidence that he didn't. It's not fully developed in the record, Your Honor. I would concede that. Let me make sure I understand your argument about the three hours. I understand you to be arguing under the statute that if he has not been given however many phone calls he wants to, up to three, within three hours, and if there's no physical impossibility, so that excuse doesn't exist, as soon as three hours elapse, no one is under any obligation under this statute to allow him to make phone calls? Your Honor, I see my time's up. Is that your argument? No, my argument would be, in this case, because a different agency had him under their possession within that first three hours and did not give him his phone calls. Those rights had already been violated by the time he went into the County of Warrens' custody, nine and a half hours later. So, again, as the district court points out, if his rights were violated, they were violated by the... I understand that, but I was asking you a different question. I apologize. Assume for the moment, for the purpose of the question, and then we can get back to that. We can add the additional complication of having changed from one custody to another. But let's assume that we have the same custodian for the relevant period, for the purposes of this question. During the first three hours after arrest, there is no physical impossibility. He is not given any phone calls. At three hours plus one minute, is there any obligation under the statute to allow a phone call? If it's the original agency, I guess I'd have to say yes, because the statute does require the phone calls, and if you violate it by a minute... So your only argument is that all of a sudden the obligation of the statute no longer applies because there's been a change of custodian? That's correct, Your Honor. I see my time is up. Well, you know, if you want to look at this thing in the real world, the sheriff runs the jail, right, in Orange County. Correct. And these other outlying areas, they just have holding cells. So these folks are all going to end up in the Orange County jail. You've got kind of a continuum. They're all being funneled there. It's all part of the same process. And, Your Honor, I think the distinction in this case is having him go to Western Medical Center, a hospital open to the public, and that's when the security concerns and the practicality arguments arise. And the three hours went by. The three hours already expired by the time he arrived there. But your argument would be the same as what Judge Pragerson is pointing out. If the policy in the Orange County jail was not to allow any phone calls because people are transferred from the arresting entities to the sheriff's custody in the Orange County jail routinely every day, as I understand it, and probably more than three hours after they've been arrested. And so if they weren't given the phone calls before by the arresting entity, that's it. They don't get the phone calls. That's what you're saying. I don't think that's what I'm saying. That's what you're saying. Yeah. I think, again, the distinction here is that he wasn't taken straight from the Fountain Valley's custody to the Orange County jail. Well, I understand that. And, in fact, the Orange County jail doesn't have that policy. But as far as you're concerned, it could have that policy with regard to people arrested by other entities, and that would be fine. I don't think, again, I wouldn't make it take my point that far. I think the point would be that in your instance, clearly the arresting agency would have violated 851.5. But the Orange County sheriff wouldn't because they didn't have custody of him before the three hours were up and they were not the arresting agency. Right. I think the answer to that really goes to the second section of 851.5 that talks about when you arrive, there has to be a sign that gives you the rights. And, again, you're back into a jail facility. There's penal code section 976 that says when you're transferred from one facility to your arraignment that you get three additional phone calls. I think that scenario is, again, different than what we've dealt with. But isn't that B completely inconsistent with your position as well? Because it says that any police facility or place where an arrestee was detained. This place, this guy was clearly detained in a hospital, right? Right. But, again, they're not. There was supposed to be a sign containing this information, which certainly suggests that he had a right, right, that the arrestee has the right to free telephone calls within the local dialing area and to follow people. So that provision is inconsistent with your position. I don't think. I mean, that deals. The county warrant wasn't sued in this case because it didn't have a sign at Western Medical Center. But the sign obviously tells you something about what the framers of the statute thought the right was. You have a sign to do something you have a right to do. Therefore, he must have a right to do it. I think that the issue, Your Honor, is how clear the law was. Or if there's any precedent that says that this right created by this statute starts anew any time someone is transferred. Let me ask you this. Let's say someone is arrested in one of the outlying municipalities. Some are fairly good distance from the Orange County Jail. And by the time of arrest and the time that person is brought to the Orange County Jail, more than three hours have elapsed. Does that person, when that person arrives at the Orange County Jail, entitled to make a free telephone call? If Orange County is the entity that arrests them, then I would say absolutely, yes. No, they're arrested by some outlying police department. The statute would presumably require that outside police department to provide them those phone calls prior to his arrival. If they arrived at the Orange County Jail under any circumstances and three hours had passed, and they hadn't been given the benefit of a phone call or hadn't asked for one during that period, they wouldn't be entitled to one even though there's a sign up at the Orange County Jail. I recognize that point, and I would say that they probably would get the phone call once they arrived. They always give them the phone call when they get to the jail, don't they? I don't know the answer to that question. They have to do that. The issue here is really what happened in this case. When they get to the Orange County Jail, does the booking officer say, well, sorry, it's taken me three hours to get here, no phone call? I'd have to concede. Is that the policy? I'd have to concede on that point, Your Honor. There is no policy within the County of Orange to not provide them a phone call in Your Honor's situation. In this situation, that's not what took place. What's the difference between this situation? The difference being we went to a public hospital. That's a little ridiculous. It also raises the practicality issue, though, Your Honor, of the legitimate security concerns that the County of Orange believe are presented by having arrestees housed at an unsecured medical facility to be treated for their injuries. Well, then why didn't they just bring them to the Orange County Jail immediately? I guess that would be a question for the doctors. Presumably there was some reason for him to stay at Western Medical Center for an extended period. Somebody else beat him up too bad. Somebody else who was a party to the case who's also the arresting agency, Your Honor. Again, there is this issue of the settlement with Fountain Valley, and it's in the findings. But that's less legally irrelevant of the question now in front of us, isn't it? I don't believe so because I find— What possible legal relevance does it have? Because those people are out of the case. Whether they're out of the case on a dismissal for free or pursuant to money, I don't see its legal relevance. I would just submit that the legal relevance is that it supports the district court's finding that it wouldn't apply to the secondary agency because, like I said, if the right was violated, it had already been violated, and Mr. Mable was presumably made whole for that violation by the settlement. So he got—in other words, he got paid full wage. Well, if that's true, then, you know, that's just as true in any tort case. He can't cover twice, and there'll be contribution among the tort pieces or something. I mean, he's not going to get double payment, so that's not a problem. The double payment issue is somewhat of an issue in this case in light of the rights, the remedies available to Mr. Mable if he proves— Well, when he signed the release, they have a provision in there that the payment of the amount of the settlement, he acknowledges payment in full for all of the losses and damages and suffering and everything else that he incurred. If it arose out of the actions of the settling party, I would say yes. Again, that's in the court's findings of fact. My time has exceeded myself, and thank you. So Palm Valley can then come after Orange County and get contribution? That would be another issue that wasn't explored in this action, Your Honor. Thank you. You know, I have to tell you this. I remember when I was on the district court many, many years ago, I had the DA from Orange County, the Orange County Council, seriously arguing with me that the 14th Amendment didn't apply to Orange County. And he was very sincere about it. Maybe he's now running the county. Thank you, Your Honor. Thank you. You're all through, aren't you? One word, and it's submit. The matter is submitted. The next matter, Center for Bioethical versus L.A. County.
judges: Pregerson, W. Fletcher, Berzon